White *v*. The State.

Filed Jan. 24, 1894.

————————◆————————

No. 17,061.

WHITE *v*. THE STATE.

CRIMINAL LAW.—*Assault and Battery with Intent to Commit Rape.*— *When not Sustained.*—The charge of assault and battery with intent to commit rape is not sustained where the defendant employed no force to overcome physical resistance, but simply fondled the prosecuting witness and dallied with her person without such violence as to excite her anger or provoke physical resistance from her, and without effort to secure his desires without her consent.

From the Jay Circuit Court.

*E. E. McGriff* and *H. T. Sipe*, for appellant.

*A. G. Smith*, Attorney-General, and *R. H. Hartford*, Prosecuting Attorney, for State.

HACKNEY, J.—The appellant was charged, tried, and convicted of an assault and battery with intent to commit a rape. The prosecuting witness was appellant's

step-daughter, and a married woman. The occurrence is claimed to have taken place in the day time, at the home of the appellant and in one of the three rooms of the first story of a house of five rooms, and while two men were in a room on the second floor, his wife, a servant girl, and three children were in the kitchen, an adjoining room, her brother having just left the room and being upon the premises, and her husband's hired man within speaking distance from the house.

The appellant, his wife, the prosecutrix, and her brother had been engaged in conversation in the sitting room, and after the brother stepped out of the room, the appellant's wife started to the kitchen to assist in preparing supper, remarking, as she did so, that her husband desired to talk with his step-daughter for a few minutes. To this suggestion the prosecutrix assented, as she and the appellant became the only remaining occupants of the sitting room.    He asked her to go into the bed room with him, but when she had declined, he lifted her from the chair and pushed her into the bed room.    After professions of love for her and repeated protests that he did not intend to harm her, he sat down upon the bed, and· soon pulled her down by his side.    That which ensued. can not be repeated here with proper regard for that chastity of language which should characterize the decisions of a court of justice.

The conduct of the appellant was indecent, and his proposals were lascivious, but there was nothing indicating an intention to enforce, by superior power, his lustful desires.

She permitted his conduct and entertained his proposals of intrigue with no other resistance than in saying to him: "Now you have gone far enough," and "I am going out of the room," and he did not desist, but continued to entertain her in this manner from five to fifteen

White *v*. The State.

minutes, and she did not leave the room, but remained until her mother called her and told her that her husband desired her to go home and prepare his supper. At this time she arose from the bed and went immediately into the presence of her mother, the servant girl and the children, and from them to her own home.

As candidly stated by the attorney-general, in his brief, "during the time she and the appellant were locked up in the bed room, and while the alleged criminal assault was being perpetrated, she did not give any alarm or outcry, nor did she fight or in any forcible manner resist the importunities of her assailant. There were no marks of violence upon her person, her clothes were not disarranged, and when she left the room she was not in any perceptible state of excitement."

To none of those who were so convenient did she make any complaint of mistreatment, and her husband did not learn of the occurrence for two weeks after the assault, and then, as the attorney-general states the evidence, "when she divulged it to an aunt in a rather accidental and gossipy manner."

During this interval of two weeks, she and the appellant continued to reside in the same immediate neighborhood, and she visited his home and met and greeted him with cordiality.

This statement of the facts rests upon the evidence for the State, and does not include the evidence of the defense, which, to an unbiased mind, was sufficient to establish, beyond a reasonable doubt, that there was much of fiction in the narrative of the prosecutrix. It is upon this possible state of facts, that the prosecutor asks us to affirm the justice of appellant's conviction and imprisonment in the State's prison.

Under the statute then in force, whoever unlawfully had carnal knowledge of a woman forcibly and against

her will was guilty of rape,. and whoever perpetrated an assault and battery with intent to commit a rape, was guilty of a felony.

That the appellant committed an assault and battery upon the prosecutrix, by a rude touching, there can be no doubt, upon her evidence, but that such assault and battery were with intent to enforce carnal knowledge of her against her will, we have the gravest doubts. The opposition of the prosecutrix to the embraces of the appellant was of such a mild and doubtful character as only to encourage him in the belief that appeals, not to violence, but to her animal propensities; would gain her consent.

While we do not find it necessary to agree with the contention of appellant's learned counsel, that the assaulted female must make every possible resistance against the attack of her assailant, to repel the presumption of consent, we do conclude that in the absence of threats to do bodily harm, or other circumstances of duress, a woman of sound mind should more than feign a defense of her honor. If, as in the present case, the resistance offered is so insignificant as to be easily overcome, and no attempt is made by the man to enforce carnal knowledge against such resistance, we have no hesitancy in denying the existence of an intent to commit a rape.

Here, accepting all that the prosecutrix claims, the appellant employed no force to overcome physical resistance, he simply fondled her and dallied with her. person, without such violence as to excite her anger or provoke physical resistance from her, and without effort to secure his desires without her consent.

For this offense of the appellant, the punishment visited upon him is not prescribed by the laws of this State. A simple assault and battery can be no justifica-

tion for imprisoning the appellant in the State's prison, however much the court or jury may have felt the importance of punishing an offender against the sacredness of woman's virtue.    Especially is this true when the facts show that the woman, by her negative encouragement, was *particeps criminis* to this offense.

The prosecutor insists that the view of the case here accepted will not authorize a reversal, because of the rule that this court will not pass upon the weight of the evidence, and, as contended, if the verdict is contrary to the evidence, the judgment will not be disturbed as contrary to law.

We do not weigh the evidence, we simply find that there is no sufficient evidence to support the verdict. One necessary element in the case, intent to ravish, is absent, and the verdict is not only contrary to law, but is contrary to the evidence.

We can neither overrule nor criticise the case of *Stout* v. *State*, 78 Ind. 492, which holds that where a verdict in a criminal case is not sustained by the evidence, it is contrary to law.    No rule of justice or common sense conflicts with that holding, and any other decision would enforce a narrow technicality by which a citizen of the State could be imprisoned and deprived of his liberty without evidence, and for an offense unknown to the law, justified only by the existence of a charge and a verdict.

We commend the course of the attorney-general in his candor of statement and fairness in the argument of this case, as in other cases.    Too often the zeal of attorneys leads them to forget that duty does not require them to advocate an unjust cause.    In criminal cases the State of Indiana does not ask conviction without evidence to remove all reasonable doubts of guilt.    Her representative is neither required to demand nor justified in ask-

ing a conviction with less. It is upon this principle that the attorney-general practically concedes the justice of this appeal.

The judgment of the circuit court is reversed, with instructions to grant a new trial.

