## HOLLISTER *v.* THE STATE.

[No. 19,452. Filed March 5, 1901.]

CRIMINAL LAW.—*Assault with Intent to Commit Rape.—Evidence.—* Defendant, engaged in selling medicines. called at the home of the prosecuting witness and asked if she would have some of his medicines. Upon her refusal he stepped inside the room, telling her she looked hearty, and advanced toward her, she stepping backward until reaching about the middle of the room. when she went out on the porch by the door through which he entered. Defendant then asked her how long since she had had any family, and why she did not have more family, and said "Have one of mine, won't you?" The most offensive part of the conversation occurred out upon the open porch, in view of her husband in conversation with a neighbor upon the highway thirty rods distant. When she called her husband, defendant left. *Held,* that the evidence was insufficient to warrant a conviction of an assault with intent to commit rape.

From the Delaware Circuit Court.   *Reversed.*

*R. S. Gregory, A. C. Silverburg* and *O. J. Lotz,* for appellant.

*E. M. White* and *W. L. Taylor,* Attorney-General, for State.

HADLEY, J.—Appellant was convicted of an assault with intent to commit rape. His motion for a new trial was overruled. The evidence is in the record, and its sufficiency to sustain the verdict and judgment is the principal question discussed. The undisputed facts are that the prosecuting witness is a married woman living with her husband on a farm in Delaware county. On May 21, 1900, the appellant, forty-nine years of age, was engaged in traveling the country in the business of selling tombstones and soliciting orders for medicines for rheumatism and female diseases. He traveled in a buggy, and was a stranger in the community. On the day named he called at the home of the prosecuting witness about 1 o'clock p. m. She was alone. Her husband at the time was thirty rods distant on the highway in conversation with a neighbor in view of the open porch in front of the house door. Neighbors lived near by. Appellant hitched his horse to the fence and stepped onto the open porch in front of the door. The prosecuting witness continues the story as follows: "He knocked at the door, and upon my going to the screen he inquired how far it was to Richard Stewart's. I pointed him to where Mr. Stewart lived. He then took hold of the door and said: 'My name is Dr. Johnson, and maybe you will have some of my medicine.' I replied, 'No, sir; not to-day.' He then stepped inside and said to me: 'You look hearty.' I replied, 'I am hearty.' He kept approaching me and I kept stepping backwards until I had reached almost the middle of the room, when I thought I would go outdoors. I made for the door that he came in at, and he said I ought to have some of his remedies, and I said, 'No, sir.' He then wanted to know how long it had been since

I.had had any family. I told him it had been about ten
years.. He then wanted to know why I didn't have..more
family. I told him that was my business and none of his..
He then wanted to know what I did. I was out on the
porch by that time, and he was following me up, and I
replied that I did not do anything and told him to go. He
then, said: 'Have one of mine, won't you?' and I said:
'Drot you, get!' He acted independently, and I saw my
husband in the road and I said: 'I shall call my husband,'
and as I started to call him the defendant started for his rig,
and went about as fast as he could. I hallooed to my hus-
band to stop him, and my husband hallooed at him, but he
never stopped or looked towards him. Before I called my
husband he sauntered around on the porch as though he
didn't have to go. He did not touch me at any time, nor
try to prevent me from leaving the room." Four other
married women residing in the vicinity testified to similar
conduct of the appellant in asking offensive questions under
a pretense of selling a female remedy at their respective
homes, on the same day, at times, two before and two after
the acts complained of. Appellant testified in his own be-
half, admitting the substance of the testimony of the prose-
cuting witness, but disclaimed any assault or criminal
intent. This was all the important evidence given. Ap-
pellant insists that under the evidence he is not guilty of
the offense for which he has been convicted.

The prosecution is based upon the following statutes:
"Whoever, perpetrates an assault *, * * upon any
human being; with intent to commit a felony, shall, upon
conviction," etc. §1982 Burns 1894, §1909 Horner 1897.
"Whoever, having the present ability to do so, unlawfully
attempts to commit a violent injury on the person of an-
other, is guilty of an assault." §1983 Burns 1894, §1910
Horner 1897. "Whoever unlawfully has carnal knowledge
of a woman forcibly against her will is guilty of rape."
§1990 Burns 1894; §1917 Horner 1897.

To sustain the conviction it must appear beyond reasonable doubt that appellant having the present ability to do so unlawfully attempted to commit a violent injury upon the prosecuting witness with intent then and there and thereby unlawfully to have carnal knowledge of her, forcibly and against her will. To make out the crime two elements must occur: (1) Attempt, and (2) intent to accomplish sexual intercourse forcibly and against the will of the woman. An attempt implies the exercise of physical force directed to some definite end, an actual entering upon the execution of a purpose, which, if not prevented, or diverted, will result in the violent injury intended. "There is a marked distinction," says a recent author, "between 'attempt' and 'intent.' The former conveys the idea of physical effort to accomplish an act; the latter, the state of mind with which an act is done or contemplated. Neither mere words and threats, nor mere preparation to commit a crime, are sufficient to constitute an attempt. It is essential that there shall be some overt act which will apparently result in the crime, unless interrupted by circumstances independent of the doer's will." Clark's Crim. Law, §56. Another author in speaking upon the same subject says: "A purpose to commit violence, however fully indicated, if not accompanied by an effort to carry it into immediate execution, is not sufficient. * * * A menace does not constitute an assault; to complete the offense there must be an unequivocal purpose of violence accomplished by an act which, if not stopped or diverted, would produce a battery." Gillett on Crim. Law, §222. See, also, *Cutler* v. *State,* 59 Ind. 300; *People* v. *Yslas,* 27 Cal. 630, 633; *Brown* v. *State,* 95 Ga. 481, 20 S. E. 495; *Johnson* v. *State,* 43 Tex. 576; *State* v. *Davis,* 1 Ired. 125, 35 Am. Dec. 735; *Berkeley* v. *Commonwealth,* 88 Va. 1017, 14 S. E. 916.

Mere words, however impertinent or offensive, when not in the nature of threats, as we have seen, cannot be accepted as establishing an attempt to commit a violent injury, and

in a case like this the question of intent becomes immaterial when no attempt is shown to put such intent into action. Tested by these principles the evidence falls far short of sustaining the judgment. It is shown that the incident occurred about midday; that as the accused entered the house the prosecuting witness retired from the door, and during the conversation that ensued as the defendant advanced toward her she retreated to "about the middle of the room," where she determined to go out of doors, whereupon she proceeded to leave the room, going out upon the porch by the same door through which the defendant had entered, without hindrance or effort to dissuade her by the defendant. Much of the conversation, and the most offensive part of it, occurred out upon the open porch in view of her husband in conversation with a neighbor in the highway thirty rods distant. It must be believed that if the defendant had intended a criminal assault upon the prosecuting witness, he would not have permitted her to leave the room for the open porch without some effort to prevent it; but it appears that she went out, necessarily passing near him without meeting with any interference, by word or act. He followed her to the porch, but what was said and done there, in view and hearing of her husband and a neighbor, is incompatible with a design forcibly to compel the submission of her person. Under the evidence the appellant did not lay hand upon the prosecuting witness, nor attempt to do so, though the opportunity was present. At no time did he make any hostile demonstration toward her, either to coerce, to seize, or prevent her escape, and while his conduct upon that day toward the prosecuting witness and other defenseless wives of the neighborhood was most reprehensible, and deserves to be severely rebuked, yet courts have no power to punish unless his offense is brought within the definition of the crime charged; and this the evidence does not do.

Judgment reversed, with instructions to grant the appellant a new trial. The clerk will issue the necessary notice for a return of the prisoner.