DAVID LEROY HENDLEY v. STATE OF INDIANA.

[No. 2-773A156. Filed June 6, 1974.]

*Robert E. Hughes,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

## CASE SUMMARY

BUCHANAN, J.—Defendant-Appellant David Hendley (Hendley) appeals from a jury conviction of Assault and Battery with Intent to Commit a Felony (Rape), claiming insufficient evidence as to the requisite intent, and prejudice resulting from improper testimony of prior arrests.

We affirm.

## FACTS

The facts and evidence most favorable to the State are:

On July 24, 1971, an 18 year old girl (Karen), was employed as a babysitter at the home of Barry and Sandra Jones in Indianapolis, Indiana. Hendley and a female companion, Diana Gist (Diana), were present when Karen arrived at the Jones' home about 4:00 P.M. The four adults (the Joneses, Hendley and Diana) then departed, leaving Karen in charge of the Jones' two small children.

Later that evening, Hendley and Diana returned to the house with Diana's young daughter and asked Karen if she would agree to watch over her too. Karen agreed, and the couple departed. They then visited various taverns until about 2:00 A.M.

Hendley then returned to the Jones' residence, leaving Diana asleep in the car. When Karen answered the door, Hendley informed her that he had come for Diana's daughter who, along with the other two young children, was asleep in a bedroom.

After Hendley gained entrance, Karen resumed watching T.V. in the living room. Hendley followed her, and while both were seated, asked Karen if she was a virgin. After receiving an affirmative reply, Hendley asked her to go to bed with him into the bedroom. She replied, "No, I don't want to go to bed with you."

Hendley then went into the kitchen. During his absence, Karen attempted to telephone her parents who lived eight blocks distant. This attempt was thwarted by Hendley who by this time had reentered the room and placed his finger over the phone and advised Karen that she "wasn't going to call anyone."

This was followed by Hendley's continued insistence that Karen "go to the bedroom" with him—and Karen's repeated refusals.

Hendley then returned to the kitchen, obtained a knife and began throwing it in front of Karen . . . toward a door. Hendley later obtained a second knife from the kitchen and ran its blade across Karen's throat and legs, while placing his other hand on her breast, all of which was accompanied by additional demands that she go with him into the bedroom. When Karen continued to refuse, Hendley threatened to "split [her] wide open" if she did not comply.

Karen maintained her resistance.

Hendley again withdrew to the kitchen. This time Karen attempted to flee out the front door. Hendley intercepted her on the front porch, seized her by the arm and pushed her back inside against a wall, telling her she was not going to leave.

Later as Hendley investigated a crying child in a bedroom, Karen did escape. She ran to the nearby home of a girlfriend. Hendley pursued her for a short distance, threatening to kill the children if she did not return.

Karen telephoned her parents, who summoned police. Hendley was arrested shortly thereafter at the Jones' home.

At the trial, one of the arresting officers testified as to a conversation he had with Diana informing her of what had transpired since she had last seen Hendley. He testified in part:

> "So we advised her of what had happened and the first thing that she said was, she called him a name and said you've done it again, you've done it again, I didn't believe you before but by God, you've done it again, and that's the same exact words that she said."

No objection was made to this testimony. After the next question, trial counsel objected to the conversation as being hearsay, and the objection was sustained. A few questions later the witness again referred to the fact that Diana said previously, "he had been arrested before for assault on a baby sitter." Again trial counsel objected. The Court sus-

tained the objection and admonished the jury to disregard "reference to any prior arrests which at least at this point has no bearing on his guilt or innocence."

The jury found Hendley guilty of Assault and Battery with Intent to Rape. He was subsequently sentenced to 1 to 10 years imprisonment under IC 1971, 35-1-54-3, Ind. Ann. Stat. § 10-401 (Burns 1973 Supp.) (Assault and Battery with Intent to Commit a Felony).

Hendley appeals.

### ISSUES

Issues properly before this court are:

  ISSUE ONE—Was the evidence sufficient to prove that Hendley intended to commit Rape?

  ISSUE TWO—Was Hendley prejudiced by Trooper Hilzley's testimony relating to prior arrests despite the trial court's admonishment to the jury to disregard the testimony?

As to ISSUE ONE, Hendley admits the evidence was sufficient to prove an assault and battery, but argues that the proof could not support a reasonable inference that he intended to rape Karen.

The State argues that a reasonable inference as to Hendley's intent could be drawn by the jury from the evidence.

As to ISSUE TWO, Hendley contends that the harm caused by Trooper Hilzley's testimony relating to Hendley's prior arrest record was not cured by the trial court's action of sustaining his objection and admonishing the jury. By so arguing, Hendley raises a different basis of objection to the testimony than was advanced by him at trial, when he stated the evidence constituted hearsay.

The State's position is that adequate measures were taken by the trial court to erase any alleged impropriety which attended Hilzley's testimony.

Waiver of Issue

Hendley argues for the first time on appeal that he was charged and sentenced under the wrong statute—an assertion of error not contained in his Motion to Correct Errors. It is therefore waived. *Certain* v. *State* (1974), 261 Ind. 101, 300 N.E.2d 345; *Spivey* v. *State* (1971), 257 Ind. 257, 274 N.E.2d 227; *Clardy* v. *State* (1973), 156 Ind. App. 121, 294 N.E.2d 807; Rule TR. 59 (G); Rule CR. 16.

Nor need we consider this issue under the doctrine of "fundamental error."[1] As the record demonstrates, the indictment against Hendley charged him with Assault and Battery with Intent to Commit a Felony (Rape) pursuant to IC 1971, 35-1-54-3, Ind. Ann. Stat. § 10-401 (Burns 1973 Supp.). In *Washington* v. *State* (1971), 257 Ind. 40, 271 N.E.2d 888, an identically worded indictment supported a conviction under this particular statute.

## DECISION

ISSUE ONE.

CONCLUSION—It is our opinion that the evidence was sufficient to prove Hendley's intent to commit rape.

Chief Justice Arterburn recently summarized the standard of proof of felonious intent in offenses of this kind:

"To prove the offense of Assault and Battery with Intent to Rape, the intended act [rape] need not to be shown to have been consummated, *it needs only to be shown that there was conduct by the accused from which the court or jury could logically and reasonably infer the element of intent.* This court in Hanes v. State (1900), 155 Ind. 112, 116, 57 N.E. 704, 705, made the following statement on this point.

'Intent is a mental function, and where not consummated, it is impossible to know with absolute certainty what was operating in the actor's mind; and in such cases it *must*

---

1. For a discussion of this doctrine, *see, Bennett* v. *State* (1973), 159 Ind. App. 59, 304 N.E.2d 827, and cases assembled therein.

*be arrived at by courts and juries from a consideration of the conduct and the natural and usual sequence to which such conduct logically and reasonably points. * * *'* "* (Emphasis supplied.) *Washington* v. *State* (1971), 257 Ind. 40, 271 N.E.2d 888, at 889-890. *See also, Arnett* v. *State* (1973), 155 Ind. App. 82, 291 N.E.2d 376; *McIntosh* v. *State* (1970), 254 Ind. 484, 260 N.E.2d 775; *Peachee* v. *State* (1939), 216 Ind. 42, 22 N.E.2d 979; *White* v. *State* (1893), 136 Ind. 308, 36 N.E. 274; *Stearns* v. *State* (1956), 235 Ind. 391, 134 N.E.2d 148.

Our courts have understandably been reluctant to find a basis for reasonably inferring intent to rape if the alleged victim is over the age of consent (as Karen was), and the conduct of an accused points only to urgent sexual solicitation designed to obtain voluntary consent unaccompanied by threats, demonstration of hostility, or other forms of duress. *See, White* v. *State, supra; Hollister* v. *State* (1901), 156 Ind. 255, 59 N.E. 847; *Rahke* v. *State* (1907), 168 Ind. 615, 81 N.E. 584.

However, in each of these cases, the court has recognized justification for such an inference if hostility or duress were injected into the factual setting. Duress or fear of physical violence does form the basis for a rational inference of intent to rape:

"An acquiescence obtained by duress or fear of personal violence will avail nothing, the law regarding such submission as no consent at all. *If the mind of the woman is overpowered by a display of physical force, through threats, express, implied, or otherwise, or she ceases resistance through fear of great harm, the consummation of unlawful intercourse by the man would be rape.*" *Rahke* v. *State, supra,* at 619, 81 N.E. at 586. (Emphasis supplied.)

And so it was at the home of the Jones family in the early morning of July 25, 1971. While Hendley did not in fact ultimately rape his victim, his intent to do so is reasonably inferable from the circumstances. Beginning with his coarse inquiry as to Karen's virginity accompanied by an invitation to the bedroom, Hendley created a climate of violence, intimidation, and coercion designed to break her will to resist.

Running a knife along a female's throat and threatening to split her wide open could hardly be characterized as the "prosecution of the arts of the seducer." *Hanes* v. *State* (1900), 155 Ind. 112, at 117, 57 N.E. 704. *See also, Byasse* v. *State* (1968), 251 Ind. 114, 239 N.E.2d 586; *Peachee* v. *State, supra.*

ISSUE TWO:

CONCLUSION—It is our opinion that Hendley is not entitled to reversal for alleged prejudice caused by testimony relating to his prior arrest record.

Hendley's claim of error may be disposed of upon any one of three grounds:

*First,* any impropriety attending Trooper Hilzley's testimony as to Diana's statements regarding Hendley's prior arrest for assaulting a baby sitter was cured by the trial court's immediate action in sustaining Hendley's objection and admonishing the jury to disregard the testimony:

"If a jury is admonished by the trial judge to disregard what has occurred at trial, or if other reasonable curative measures are taken, no reversible error will be found." *Ballard* v. *State* (1974), Ind. App., 309 N.E.2d 817.
"The admonition to disregard is presumed to correct any alleged error." *Martin* v. *State* (1974), 261 Ind. 492, 306 N.E.2d 93. *See also, Sankey* v. *State* (1973), 157 Ind. App. 627, 301 N.E.2d 235; *McIntosh* v. *State, supra; DeHority* v. *State* (1939), 215 Ind. 390, 19 N.E.2d 945.

*Second,* Hendley's grounds asserted on appeal (impropriety of reference to prior arrests) as to the prejudicial effect of this testimony are of a different nature than the grounds raised in his objection at trial (hearsay). The issue is, therefore, not properly presented for review. *Johnson* v. *State* (1972), 258 Ind. 683, 284 N.E.2d 517; *Jones* v. *State* (1973), 260 Ind. 463, 296 N.E. 2d 407.

*Third,* no objection was made before the State's question was answered by Hilzley. Moreover, Hendley made no motion

to strike or to admonish the jury (even though this was done on the court's own motion). Under such circumstances, as timely action was not taken to remedy any alleged prejudice, no error is presented for review. *Johnson* v. *State* (1972), 152 Ind. App. 104, 281 N.E. 2d 922; *Emerson* v. *State* (1974), 261 Ind. 436, 305 N.E.2d 435; *Ward* v. *State* (1965), 246 Ind. 374, 205 N.E.2d 148.

Hendley's conviction is affirmed.

Sullivan, J. and White, J., concur.

NOTE.—Reported at 311 N.E.2d 849.