**Arthur Lenord VANN, Jr., Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 3–579A131.**

Court of Appeals of Indiana, Third District.

July 24, 1980.
Rehearing Denied Sept. 12, 1980.

John F. Surbeck, Jr., Deputy Public Defender, Fort Wayne, for appellant.

Theodore L. Sendak, Atty. Gen., Joel Schiff, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

Arthur Lenord Vann, Jr., was convicted by a jury of first-degree burglary and robbery. In this appeal he raises the following issues:

(1) whether there was sufficient evidence to prove beyond a reasonable doubt that he was the perpetrator of these crimes; and

(2) whether the trial court erred when it permitted the prosecutor to cross-examine him about his post-arrest silence.

■ On June 10, 1977, one Morris was an overnight guest at the residence of one Schroeder. At about 3:30 A.M. on that date Morris was awakened by a loud noise. Only a moment later someone shined a flashlight in his face, grabbed him by the wrist and pulled him off of the couch on which he had been sleeping. Morris told the intruder that his money (a new twenty-dollar bill, a new five-dollar bill and two worn one-dollar bills) was on a nearby table. The intruder then took Morris into an adjoining room and ordered him to lie on the floor with a blanket over his head. However, when the intruder then announced that he had a gun and intended to kill Morris, Morris threw off the blanket and looked around the room. In the light cast through two windows by a nearby streetlamp, Morris observed two persons in the room with him, both of whom were black males. The first, his assailant, was about the same height as Morris, wore blue jeans and had his shirttails out. The second was taller, thinner and had longer hair than the first, and wore blue jeans which had distinctive markings on them from the knees down. Within a few moments the intruders removed a bicycle from the room where they had held Morris and then left the house.

Meanwhile, Schroeder, who had been sleeping in an upstairs bedroom, was awakened by the commotion downstairs. After determining that there had been a break-in, he left the house by climbing out a window, climbing down onto the roof of a porch, and jumping to the ground. Before he could summon help, however, Schroeder saw two men leave the house and drive away in a light-colored Cadillac automobile.

Upon returning to the house, Schroeder discovered that, in addition to his bicycle, his radio was also missing. Either Morris or Schroeder then called police.

A police officer arrived at the scene within five minutes. Morris gave the officer descriptions of the two intruders and Schroeder gave a description of the vehicle he had observed. The officer called out the descriptions over his walkie-talkie and, only a few minutes later, he received a report that two suspects had been apprehended. A uniformed officer then arrived and drove Morris to the scene of the apprehension.

At the scene, standing behind a light-colored Cadillac, were two black males who matched the descriptions given by Morris. Morris identified them as the men who had broken into Schroeder's house. The shorter man, then identified as Vann, had in his possession $27 in bills in the same denominations and in the same condition as those taken from Morris. In the car was a radio, later identified by Schroeder as his, a flashlight and a crowbar. On the crowbar were chips of paint which were later found to match paint scrapings taken from the door of Schroeder's house which had been broken open by the intruders.

■ This evidence was sufficient to support a finding beyond a reasonable doubt that it was Vann who committed the crimes charged. *See, Luckett v. State* (1978), Ind. App., 381 N.E.2d 560. Moreover, since only a very short time elapsed between the break-in and Morris' identification of the perpetrators, there is no reason to conclude that the show-up at the scene of the apprehension was unnecessarily suggestive. *Zion v. State* (1977), 266 Ind. 563, at 567, 365 N.E.2d 766, at 769.

■ At trial Vann testified in his own defense, explaining that at the time he was arrested he had been in the company of the driver of the Cadillac for only a short time. He further related that he had spent the entire evening at two taverns and that he had, sometime after 3:00 A.M., merely accepted a ride home from the man with whom he was later arrested.

On cross-examination, the State questioned Vann as follows:

"Q. Now do you recall Sgt. Cordill, this gentleman right here—would you stand, please, Sgt. Cordill. Do you remember this gentleman right here?

"A. I remember one of them.

"Q. Do you remember Sgt. Cordill coming down to talk to you after you were arrested on the date in question—shortly thereafter to ask you if you wanted to tell him what happened? Do you remember that?

"MR. SURBECK: Objection, Your Honor.

"COURT: Well, now it's not necessary for you to slap your hands when you make an objection. All you have to do is make an objection and state it on the record. Now do you—

"MR. SURBECK: May counsel approach this bench?

"COURT: All right. You can come up to the bench.

"(At which time, there is conversation at the bench outside the hearing of the Jury and this reporter.)

"COURT: The Court will overrule the objection. He may answer the question.

"Q. Do you remember the question?

"A. Yes, I do.

"Q. Okay. Did you tell Sgt. Cordill the story that you just told to the Jury and the Court today?

"A. No, I didn't.

"Q. You didn't, did you?

"A. No, I didn't.

"Q. In fact, this is the first time this has surfaced with regard to any police officers or investigation, is that correct, your story?

"A. Come again?

"Q. This is the first time you've mentioned this story to any police officers when they've been present as they've been present throughout here today?

"A. Besides that the one that came over that was talking about doing this case here, no.

"Q. Why didn't you tell Sgt. Cordill or some of the other officers that story that you told today that you were out having drinks and doing this and doing that and give an explanation as to where you got your Twenty-Seven Dollars—a Twenty Dollar bill, a Five Dollar bill, and two Ones?

"A. Well, during the present time the guy that I was with told me that this was his radio and I believed that was his radio and I felt like I didn't have any reason to talk to him.

"Q. Okay. And you didn't offer any explanation as to where you were when they arrested you right along with Mr. Beachem, or Joe Henry Day, whatever his name really is, and charged you with the same offense?

"A. Cause he didn't ask me—they didn't ask me.

"Q. They asked to talk to you, they asked you what you knew probably, didn't they? They asked you where you were? Basic simple questions, and you didn't offer an explanation right on the spot."

Vann now contends that the trial court committed reversible error when it permitted the State to penalize him for exercising his constitutional right to remain silent by attempting to impeach him with his post-arrest silence. He relies on *Jones: Payne v. State* (1976), 265 Ind. 447, 355 N.E.2d 402, following *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91.

An examination of the above-quoted portion of the record discloses that Vann objected to but one question: the question asking him whether he remembered the occasion when Sgt. Cordill questioned him. At that point no mention had been made of Vann's failure to give a statement; therefore, he had suffered no prejudice. Furthermore, the objection appearing in the record was a general one, and it could not have preserved any error for review in this Court. *Johnson v. State* (1978), Ind.App., 380 N.E.2d 566, at 569; *Gurley v. State* (1976), 264 Ind. 552, at 556, 348 N.E.2d 16, at 19.

■ While the record does show that there was a conference at the bench immediately following the objection, it also shows that the conference was off the record. Consequently, any assumption by this Court that Vann presented to the trial court the specific ground upon which he

now relies would be based on mere conjecture and would plainly be improper. Moreover, the fact that the conference occurred outside the hearing of the court reporter did not relieve Vann of his duty to present a complete record in support of his claim of error, for Ind.Rules of Procedure, Appellate Rule 7.2(A)(3)(c) provides a procedure for presenting a record of such proceedings to this Court.

▪ As noted above, the State resumed its line of questioning after the bench conference. It proceeded to ask Vann why, when given the opportunity following his arrest, he had not given any account of his activities on the night of the offense. Vann made no objection of any kind to the continued questioning on that subject. He therefore waived any error in the admission of that testimony. *Winston v. State* (1975), 165 Ind.App. 369, at 372–373, 332 N.E.2d 229, at 231; *Harrison v. State* (1972), 258 Ind. 359, 281 N.E.2d 98; *Hendley v. State* (1974), 160 Ind.App. 338, 311 N.E.2d 849.

▪ Even if Vann had properly preserved this issue for review by making a timely specific objection (as did the defendant in *Doyle v. Ohio, supra* ), it is clear from the evidence detailed above that the trial court's error in permitting the questioning of which Vann complains was harmless beyond a reasonable doubt.

In *Doyle v. Ohio, supra,* the United States Supreme Court held that the use for impeachment purposes of an accused's silence, at the time of arrest and after receiving *Miranda*[1] warnings, violated the Due Process Clause of the Fourteenth Amendment. However, the closing language of the majority opinion in that case strongly suggests that, in a proper case, such an error could be deemed harmless:

"We hold that the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment. The State has not claimed that such use in the circumstances of this case might have been harmless error. Accordingly, petitioners' convictions are reversed and their causes remanded to the state courts for further proceedings not inconsistent with this opinion.[2] [Footnote omitted.]" 96 S.Ct. at 2245–2246.

▪ In the case at bar, the evidence of guilt absent the improper impeachment is, unlike that in *Doyle,* nearly overwhelming.

---

1. *Miranda v. Arizona* (1966), 384 U.S. 436, at 467–473, 86 S.Ct. 1602, at 1624–1627, 16 L.Ed.2d 694.

2. Giving due regard to this language, it seems unlikely that the U.S. Supreme Court contemplated the use of the "fundamental error" doctrine in order to review such errors when they are not properly preserved. For, as a matter of definition, the concepts "fundamental error" and "harmless error" are antithetical:

   "The 'fundamental error' doctrine permits a reviewing court to consider the merits of an improperly raised error if the reviewing court finds that 'the record reveals *error so prejudicial to the rights of the Appellant that he could not have had a fair trial.'* " (Our emphasis) *Winston v. State* (1975), 165 Ind.App. 369, at 373, 332 N.E.2d 229, at 231. See also the cases cited in *Winston.*

   "(E) Defect in Form No Ground for Reversal. No judgment shall be stayed or reversed, in whole or in part, by the court on appeal for any defect in form, variance or imperfections contained in the record, pleadings, process, entries, returns or other proceedings therein, which by law might be amended in the court below, but such defects shall be deemed to be amended in the court on appeal; *nor shall any judgment be stayed or reversed, in whole or in part, where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below."* (Our emphasis.) Ind.Rules of Procedure, Appellate Rule 15(E).
   
   "Trial Rule 61
   HARMLESS ERROR
   No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. *The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."* (Our emphasis.) Ind.Rules of Procedure, Trial Rule 61.

Consequently, a finding by this Court that the constitutional error in permitting the impeachment of Vann by his post-arrest silence was harmless beyond a reasonable doubt[3] is clearly warranted. The case at bar is not one, as was *Chapman v. State of California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, "in which, absent the constitutionally forbidden [impeachment], honest, fair-minded jurors might very well have brought in not-guilty verdicts." 87 S.Ct. at 829. Rather, it is a case, as was *Carter v. State* (1977), 266 Ind. 140, 361 N.E.2d 145, where the evidence is so convincing that a jury could not properly find against it. 361 N.E.2d at 148.

Vann's clothing and his height matched the description given by Morris. He was found in a car matching the description given by Schroeder. The car in which Vann was found was being driven by a man matching Morris' description of Vann's accomplice. The car contained a flashlight, a radio stolen from the residence and a crowbar. Paint chips matching those taken by police from the door of Schroeder's house were found on the crowbar. At the time of his arrest Vann had in his possession $27 in bills in the same denominations and in the same condition as those taken from one of the victims. Furthermore, Vann and his companion were apprehended within a few blocks of the Schroeder residence only minutes after the burglary and robbery took place. Under these circumstances, the error in allowing the improper impeachment was plainly harmless beyond a reasonable doubt.

For all the foregoing reasons, the judgment below is affirmed.

Affirmed.

GARRARD, P. J., concurs.

STATON, J., dissents with opinion.

---

**3.** A judgment need not be reversed for constitutional error where it appears that such error was harmless beyond a reasonable doubt. *Chapman v. State of California* (1967), 386 U.S.

STATON, Judge, dissenting.

I dissent. It is fundamental error to cross-examine a defendant upon his post-arrest silence. *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91. This is especially true where the trial court permits the cross-examination questions without admonishing or instructing the jury that the defendant has no duty to break his silence after receiving his *Miranda* warning. *Jones v. State* (1976), 265 Ind. 447, 355 N.E.2d 402 (Givan, C. J. and Arterburn, J. dissenting). The rationale for this fundamental error is based upon the *Miranda* warning given to the defendant when he is arrested. This warning advises the defendant that he has a right to remain silent and that anything he may say may be used against him. As Justice Powell explained in *Doyle*:

"Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested."

426 U.S. at 617, 96 S.Ct. at 2244, 49 L.Ed.2d at 97.

The cross-examination questions regarding Vann's post-arrest silence were:

"Q. Now do you recall Sgt. Cordill, this gentleman right here—would you stand, please, Sgt. Cordill. Do you remember this gentleman right here?

"A. I remember one of them.

"Q. Do you remember Sgt. Cordill coming down to talk to you after you were arrested on the date in question—shortly thereafter to ask you if you wanted to tell him what happened? Do you remember that?

"MR. SURBECK: Objection, Your Honor.

"COURT: Well, now it's not necessary for you to slap your hands when you make an objection. All you have to do is make an objection and state it on the record. Now do you—

---

18, at 24, 87 S.Ct. 824, at 828, 17 L.Ed.2d 705, at 710–711; *Dillard v. State* (1971), 257 Ind. 282, at 297, 274 N.E.2d 387, at 395.

"MR. SURBECK: May counsel approach the bench?

"COURT: All right. You can come up to the bench.

"(At which time, there is conversation at the bench outside the hearing of the Jury and this reporter.)

"COURT: The Court will overrule the objection. He may answer the question.

"Q. Do you remember the question?

"A. Yes, I do.

"Q. Okay. Did you tell Sgt. Cordill the story that you just told to the Jury and the Court today?

"A. No, I didn't.

"Q. You didn't, did you?

"A. No, I didn't.

"Q. In fact, this is the first time this has surfaced with regard to any police officers or investigation, is that correct, your story?

"A. Come again?

"Q. This is the first time you've mentioned this story to any police officers when they've been present as they've been present throughout here today?

"A. Besides that the one that came over that was talking about doing this case here, no.

"Q. Why didn't you tell Sgt. Cordill or some of the other officers that story that you told today that you were out having drinks and doing this and doing that and give an explanation as to where you got your Twenty-Seven Dollars—a Twenty Dollar bill, a Five Dollar bill, and two Ones?

"A. Well, during the present time the guy that I was with told me that this was his radio and I believed that was his radio and I felt like I didn't have any reason to talk to him.

"Q. Okay. And you didn't offer any explanation as to where you were when they arrested you right along with Mr. Beachem, or Joe Henry Day, whatever his name really is, and charged you with the same offense?

"A. Cause he didn't ask me—they didn't ask me.

"Q. They asked to talk to you, they asked you what you knew probably, didn't they? They asked you where you were? Basic simple questions, and you didn't offer an explanation right on the spot."

In *Doyle, supra,* Justice Powell stated that:

"[W]hile it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial . . .

\*    \*    \*    \*    \*    \*

"We hold that the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment. . . ."

*Doyle v. Ohio,* 426 U.S. at 618–19, 96 S.Ct. at 2245, 49 L.Ed.2d at 98.

The majority opinion attempts to dispose of this due process issue, whether Vann was denied a fair trial when the prosecution was permitted to ask questions regarding his post-arrest silence, by treating it as waived on procedural grounds. Fundamental error does not require a specific objection before this Court may consider its merits. *Winston v. State* (1975), 165 Ind.App. 369, 332 N.E.2d 229.[1] As our Indiana Supreme Court clearly stated in *Jones* the "use of an accused's post arrest silence to impeach his trial testimony is fundamentally unfair. . . ." 265 Ind. at 450, 355 N.E.2d at 404.

Vann remained silent after his arrest. Justice Prentice made a very crucial distinc-

---

1. "The doctrine of 'fundamental error' allows an appellate court to by-pass the normal rules of appellate procedure, such as the requirement of a timely and specific objection, . . ." *Winston v. State* (1975), 165 Ind.App. 369, 332 N.E.2d 229 at 231.

tion between the defendant who remains silent after his arrest and the defendant who attempts to give an exculpatory account of his apparent involvement. In *Nelson v. State* (1980), Ind., 401 N.E.2d 666, Justice Prentice wrote:

"There is, however, a crucial distinction between those cases and the instant case. Jones remained silent after arrest and advisement of his rights. Doyle's silence was not absolute, but his statements to arresting officers were tantamount to silence: he merely inquired, 'What's this all about.' 426 U.S. at 615, note 5, 96 S.Ct. at 2243, 49 L.Ed.2d at 96. Charles, in the case before us, did not remain silent. Instead, he elected to give an account, albeit brief, of his participation in the events."

401 N.E.2d at 668. The prosecutor's reference to Vann's silence after his arrest violated Vann's fundamental right to a fair trial.

In further justification of its affirmance, the majority opinion characterizes the evidence as "nearly overwhelming" and concludes that the fundamental error is harmless. A careful review of the evidence indicates that it should be characterized as circumstantial evidence from which the defendant could have been found guilty by the jury if he had been given a fair trial. The evidence is not overwhelming. *Phelps v. State* (1977), 266 Ind. 66, 360 N.E.2d 191, *cert. denied* 434 U.S. 844, 98 S.Ct. 146, 54 L.Ed.2d 110.

This is the circumstantial evidence cited by the majority opinion as "nearly overwhelming":

"Vann's clothing and his height matched the description given by Morris. He was found in a car matching the description given by Schroeder. The car in which Vann was found was being driven by a man matching Morris' description of Vann's accomplice. The car contained a flashlight, a radio stolen from the residence and a crowbar. Paint chips matching those taken by police from the door of Schroeder's house were found on the crowbar. At the time of his arrest Vann

had in his possession $27 in bills in the same denominations and in the same condition as those taken from one of the victims. Furthermore, Vann and his companion were apprehended within a few blocks of the Schroeder residence only minutes after the burglary and robbery took place. . . ."

Vann testified that a police officer asked him to put on the black jacket which was in the back seat of the car and to pull out his shirt. The car did not belong to Vann. He was a passenger. He testified that he had been given a ride by the owner of the car. Furthermore, it appears that more than a few minutes elapsed between the burglary and the apprehension. Morris, who was in the house during the burglary, testified that the police arrived several minutes after they were called on the telephone. The police spent about five minutes obtaining the description of the burglars and then telephoned the description to a dispatcher. Several minutes later the police reported a possible apprehension of the subjects described in the dispatch.

If ten or fifteen minutes elapsed between the flight of the burglars and their apprehension by the police, it would seem reasonable that the Cadillac automobile would have been able to travel more than five or six blocks from the scene of the burglary. Officer Bennett testified that he followed the Cadillac for six or eight blocks after he received its description over the radio. The Cadillac was stopped five or six blocks from the scene of the burglary. As to Vann, the passenger in the Cadillac, the evidence is very circumstantial. It may be sufficient for a guilty verdict, but it is not overwhelming. Therefore, I do not agree with the conclusion of the Majority that the fundamental error was harmless.

I would grant Vann a new trial.