Robert E. NELSON and Charles Howard
Nelson, Appellants (Defendants Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 179S29.

Supreme Court of Indiana.

March 13, 1980.

Harriette Bailey Conn, Public Defender, Ihor N. Boyko, Deputy Public Defender, Indianapolis, for appellants.

Theo. L. Sendak, Atty. Gen., Philip R. Blowers, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

This is an appeal from the denial of post conviction relief, Post Conviction Remedy Rule 1. Petitioners (Appellants) were charged with rape, Ind.Code § 35–13–4–3 (Burns 1975), and kidnapping, Ind.Code § 35–1–55–1 (Burns 1975). In a joint trial by jury, they were convicted of both charges. Each was sentenced to a term of twenty-one (21) years upon the rape charge and life imprisonment upon the kidnapping conviction, with the sentences to be served concurrently. Upon direct appeal, their convictions were affirmed by this Court, *Nelson v. State*, (1976) 265 Ind. 542, 356 N.E.2d 682. The following issues are presented:

(1) Whether the prosecution made improper references to the post-arrest silence of the petitioners and to the failure of one of them to testify.

(2) Whether petitioners' were denied effective assistance of counsel.

The evidence presented at trial revealed that the victim was entering her apartment in Bloomington, Indiana, when she was abducted by three men who forced her into their car. After being transferred from the car to the back of a van, she was raped by all three men and then taken to a motel in Gary, Indiana. En route, she was again raped, and otherwise carnally abused. She was raped again in the motel room. After tying her to a bed, two of the men left the room. The third man, Petitioner Charles Nelson, remained in the room and fell asleep on the bed beside the victim. She freed herself, escaped from the room, and called the police. Charles Nelson was still in the room when the police arrived, and he was placed under arrest. Police later arrested his brother, the petitioner, Robert Nelson. At trial the victim identified both men as her abductors.

\*    \*    \*    \*    \*    \*

ISSUE I

Gary Police Officer Bartleg found Charles Nelson (Charles) in the motel room from which the victim had escaped. He advised Charles of his rights[1] and placed him under arrest. After the advisement of rights, Charles volunteered that he had gone to the motel room only after receiving a telephone call from the "two guys" who had kidnapped the victim. He also admitted having had sexual intercourse with the victim.

At trial, Charles testified in his own behalf. He admitted his presence during the abduction, the trip to Gary, and in the motel room, but he denied any actual participation, stating that he was "just there." During cross-examination, he intimated that he had tried to help the victim. In response, the trial prosecutor repeatedly inquired whether, prior to trial, Charles had ever informed anyone of his attempts to aid the victim and whether the police had given him an opportunity "to talk."

Citing *Doyle v. Ohio*, (1976) 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, and *Jones v.*

---

1. *Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

*State*, (1976) 265 Ind. 447, 355 N.E.2d 402, Charles contends that he was denied due process in that the prosecutor impermissibly used his post-arrest silence for impeachment purposes.

In *Doyle*, the Court stated that *Miranda* warnings contain an implied assurance that a defendant's silence "will carry no penalty." 426 U.S. at 618, 96 S.Ct. at 2245, 49 L.Ed.2d at 98. The Court reasoned that silence following the *Miranda* warnings is "insolubly ambiguous" because it may constitute a reliance upon those rights rather than a tacit admission that he has an insufficient defense or explanation for his conduct. 426 U.S. at 617, 96 S.Ct. at 2244, 49 L.Ed.2d at 97. Thus, the Court held that impeachment use of Doyle's post-arrest silence violated the due process clause of the Fourteenth Amendment. We agreed in *Jones, supra,* and stated that "[the] use of an accused's post arrest silence to impeach his trial testimony is fundamentally unfair." 265 Ind. at 450, 355 N.E.2d at 404.

There is, however, a crucial distinction between those cases and the instant case. Jones remained silent after arrest and advisement of his rights. Doyle's silence was not absolute, but his statements to arresting officers were tantamount to silence: he merely inquired, "What's this all about." 426 U.S. at 615, note 5, 96 S.Ct. at 2243, 49 L.Ed.2d at 96. Charles, in the case before us, did not remain silent. Instead, he elected to give an account, albeit brief, of his participation in the events.

Courts in other jurisdictions have addressed similar issues and have concluded that there is no *Doyle* violation where a defendant chooses to give police a selected account of an incident rather than clearly relying upon his Fifth Amendment rights. *See e. g., Twyman v. State,* (10th Cir. 1977) 560 F.2d 422, *cert. denied,* (1978) 434 U.S. 1071, 98 S.Ct. 1254, 55 L.Ed.2d 774; *Simmons v. Zahradnick,* (E.D.Va.1979) 465 F.Supp. 115; *Bridges v. State,* (1978) 242 Ga. 251, 248 S.E.2d 647; *Hill v. United States,* (D.C.App.1979) 404 A.2d 525; *People v. Trumbull,* (Ill.Ct.App.1978), 67 Ill.App.3d 262, 23 Ill.Dec. 935, 384 N.E.2d 842.

We conclude that *Doyle* is not dispositive because the question of whether or not Charles chose to exercise his Fifth Amendment rights is not "insolubly ambiguous." His voluntary explanation of his conduct makes it clear that he was not relying upon his Fifth Amendment rights. While a defendant may invoke his right to remain silent at any time, it does not follow that he may remain "selectively" silent and later claim that voids in the incomplete statement are Fifth Amendment sheltered and under *Doyle* cannot be used to impeach his testimony.

There is nothing in the record to suggest that Charles' failure to relate potentially exculpatory information was an exercise of his Fifth Amendment rights. Rather, we conclude that the omission, in the context of his post-arrest explanation, was probative upon the question of whether the exculpatory testimony was a recent fabrication.

Robert Nelson (Robert) contends that the trial prosecutor, during final argument, improperly referred to his failure to testify and also used "his post-arrest silence as evidence of guilt." We note that his allegations are not supported by cogent argument, nor is any authority cited as required by Ind.R.App.P. 8.3(A)(7). We will, nevertheless, briefly address his contentions.

A Gary police officer testified that he had gone to Robert's home in the course of his investigation. When he knocked at the door and announced his purpose, Robert became abusive and refused him admittance. A detective testified that after being advised of his Fifth Amendment rights, Robert stated that the "girl was willing." During final argument, the trial prosecutor addressed this testimony. He noted that Robert, by stating that the "girl was willing," had not denied his presence. Additionally, he commented upon Robert's conduct at the time that the police went to his home; he questioned whether it was the behavior of an "innocent man" and noted that Robert could have invited the police into his home to discuss the matter.

We are here concerned with statements that are somewhat innocuous in context, and we cannot say, with any certainty, that error was committed. These were not direct comments upon Robert's post-arrest silence or his failure to testify, and any indirect implications that may have resulted are too tenuous to require reversal.

## ISSUE II

■ Petitioner's claim of ineffective counsel rests upon several alleged errors. We are guided by well-settled rules in our review of this contention. An attorney is presumed to have rendered competent representation, and only a strong showing to the contrary will rebut that presumption. *E. g., Robertson v. State,* (1974) 262 Ind. 562, 319 N.E.2d 833. We must look to the facts of each case in order to determine whether counsel has provided his client with effective representation. *E. g., Roberts v. State,* (1977) 266 Ind. 72, 360 N.E.2d 825. We will not second-guess counsel's trial tactics or strategy. *E. g., Loman v. State,* (1976) 265 Ind. 255, 354 N.E.2d 205. An isolated mistake or instance of poor strategy does not render representation ineffective or inadequate; and representation is deemed to be adequate, unless the record reflects that the trial was reduced to a mockery of justice. *E. g., Merida v. State,* (1979) Ind., 383 N.E.2d 1043.

■ While at Gary police headquarters, shortly after the rapes and abduction, the victim was inadvertently led past the "booking room," where she saw Robert and immediately identified him. Sometime after this brief encounter, she was shown "a lot" of photographs, and from them, she picked Robert's. At trial, she identified Robert and testified regarding both the encounter at the police station and the photographic display. Robert contends that there were no exigent circumstances justifying the "one-on-one identification," that the photographic identification was tainted by the confrontation, and that the in-court identification was tainted by both. Thus, he argues that his counsel was ineffective inasmuch as he failed to seek suppression of all the identifications.

It is clear from the evidence presented at trial that the confrontation at police headquarters was unintentional. The police had not requested that the victim look at Robert; her spontaneous identification did not result from police instigation or prompting. The confrontation, therefore, was not unduly suggestive. *See, Johnson v. State,* (1972) 257 Ind. 634, 277 N.E.2d 791; *Grimes v. State,* (1972) 258 Ind. 257, 280 N.E.2d 575; *Griffin v. State,* (1976) Ind.Ct.App., 357 N.E.2d 917. Absent other suggestive factors, the victim's viewing of Robert, shortly before she made the photographic identification, did not render it inadmissible, there having been ample evidence of her source of an independent identification.

Because the *extra-judicial identifications* were not improper, it follows that the in-court identification was not tainted. *See Johnson, supra.* Thus, it would have been useless to file a motion to suppress; and counsel's failure to perform a futile act cannot be considered as evidence of incompetence.

■ There was testimony introduced at trial regarding a statement that Robert yelled at the victim when he saw her at the police station. Although counsel objected and argued against admission on *Miranda* grounds, Robert asserts that he failed to object that the statement "was tainted evidence flowing from an improper identification." Because, as discussed above, there had been no improper identification, this allegation is without foundation.

Robert's statement to the victim was to the effect that any sexual relations had been consensual. At trial, one witness testified that Robert had referred only to himself in the statement, while another testified that he had referred to "us." Charles asserts that counsel had been ineffective when he failed to predicate his motion for severance specifically upon Robert's remark.

Because the jury was aware that three assailants were involved, we do not believe that an isolated reference to "us" gave rise

to an inference that Robert was referring to Charles. Therefore, we conclude that error, if any, was harmless in light of the overwhelming evidence of Charles' guilt. *See Carter v. State*, (1977) 266 Ind. 140, 361 N.E.2d 145. As we are unconvinced that Charles would have been entitled to severance pursuant to Ind.Code § 35–3.1–1–11(b), we cannot say with certainty that counsel erred when he failed to specify Robert's remark as a ground for severance.

■ Charles contends that counsel failed to advise him that he would be implicating himself as an accomplice if he testified regarding his presence during the criminal events. He asserts that counsel's alleged failure deprived him of the ability to make an informed decision regarding his privilege not to testify. The record reveals that counsel stated to the trial court:

> "Your Honor, * * * I would like to indicate to the Court that I talked to my clients and have explained to them the law pertaining to their rights to remain silent, and I have told them they need not take the stand in this matter. However, notwithstanding my recommendation, each of the defendants has requested that I call them and submit their testimony before the Court which I intend to do at this time * * *. So I would want to indicate for the record, that I am attempting to pursue their desires. As a result of that, I will call the defendants to the stand."

Further, Charles testified at the hearing on his petition for post conviction relief that counsel had informed him that he would be incriminating himself if he testified. It is sufficient to note that we believe that the above indicates that counsel adequately advised Charles, and that Charles chose to testify with knowledge of the possible consequences.

Charles next complains of counsel's failure to object to the trial prosecutor's cross-examination regarding his failure to inform police of exculpatory information. Because, as we previously determined in Issue I, the cross-examination was not improper, counsel's failure to object obviously cannot be said to evidence ineffectiveness.

■ Finally, Charles and Robert contend that they were denied effective assistance of counsel "because there was an actual conflict of interest in trial counsel's representation" of both petitioners. They contend that the conflict is evidenced by the admission of Robert's statement to the victim and Charles' trial testimony.

In *Ross v. State*, (1978) Ind., 377 N.E.2d 634, 636–37, we stated:

> "Simultaneous representation of co-defendants is fraught with the potential for chaos at worst and frustration at best. It should be avoided as the plague * * *.
>
> "Nevertheless, such representation is not *per se* evidence of ineffective representation. *Martin v. State*, (1974) 262 Ind. 232, 314 N.E.2d 60 * * *."

An examination of the record reveals that Charles, in his testimony, denied that Robert was even present during the incidents. He did testify, however, that one of the men who had kidnapped the victim left the motel and went to Robert's home to seek his advice. Charles continued that Robert intervened and gave advice only in an attempt to convince the assailant to spare the victim's life. When considered in context, it is clear that Charles attempted to relieve Robert of any culpability.

Because of the nature of Charles' testimony, and because we are unconvinced that Robert's out-of-court statement entitled Charles to a separate trial, we believe that there was no actual conflict and therefore, no error in counsel's joint representation.

Petitioners have failed to show how they were prejudiced by what counsel did or failed to do. We do not find, from the evidence presented, that counsel's representation was so ineffective as to constitute a mockery of justice. It appears that counsel may have been faced with making some difficult choices. We cannot say that he may not, on one or more occasions, have made the wrong choice. We infer no opinion in this respect. Regardless, however, mistakes, standing alone, do not amount to ineffective counsel. *Blackburn v. State*, (1973) 260 Ind. 5, 291 N.E.2d 686.

We find no error. The judgment of the trial court is affirmed.

GIVAN, C. J., and HUNTER and PIVARNIK, JJ., concur.

DeBRULER, J., concurs in result.