Robert **NELSON** and Charles Nelson, Petitioners,

v.

Jack R. **DUCKWORTH, Superintendent, and Indiana Attorney General, Respondents.**

No. S 83–534.

United States District Court, N.D. Indiana, South Bend Division.

May 1, 1984.

Robert Nelson and Charles Nelson, pro se.

Linley E. Pearson, Atty. Gen. of Ind., David L. Steiner, Deputy Atty. Gen., Indianapolis, Ind., for respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This petition for writ of habeas corpus was filed pursuant to 28 U.S.C. § 2254 by two inmates presently incarcerated at the Indiana State Prison in Michigan City, Indiana. The matter is now before this court on respondents' motion to deny the writ and dismiss the petition, contained in their return to order to show cause. Both sides having briefed their respective positions, and the complete state court record having been filed with and carefully examined by this court *per Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), this petition is now ripe for ruling.

Petitioners were convicted in a joint state court jury trial of rape and kidnapping, for which they each received prison sentences of twenty-one years (rape) and life (kidnapping). Their convictions were unanimously affirmed on direct appeal by the Supreme

Court of Indiana. *Nelson v. State,* 265 Ind. 542, 356 N.E.2d 682 (1976). Petitioners subsequently commenced a post-conviction proceeding under Ind. P.C.R. 1 § 1 *et seq.,* raising the claims now in issue. The state trial court denied post-conviction relief, and the Supreme Court of Indiana unanimously affirmed the denial of relief, finding no merit in petitioners' claims. *Nelson v. State,* 272 Ind. 692, 401 N.E.2d 666 (1980).

The grounds raised by the petitioners are, as follows:

Ground one: The Petitioner's [sic] was [sic] denied their Sixth and Fourteenth Amendment rights to a fair trial during their state criminal trial where the prosecutor improperly made references to the post-arrest silence of the petitioners and to the failure of one to testify.

Ground two: The Petitioner's [sic] was [sic] denied their Sixth and Fourteenth Amendment rights to effective legal assistance of counsel during their criminal trial based upon several grounds and a real conflict of interest occurred during their trials.

■ In addressing petitioners' grounds for relief, several general principles should be noted. It should be observed that petitioners have not shown that the various state proceedings were less than full and fair, and, indeed, the state court records reveal that petitioners were afforded an adequate opportunity to raise their claims in the state courts. Accordingly, the factual findings of the state courts with respect to the present issues, including those set out in the opinions of the Supreme Court of Indiana, *supra,* are entitled to deference by this court, and those findings, being fully supported by the record, provide an adequate basis for decision herein. 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *United States ex rel. Clark v. Fike,* 538 F.2d 750 (7th Cir.1976), *cert. denied,* 429 U.S. 1064, 97 S.Ct. 791, 50 L.Ed.2d 781 (1977).

Thus, it is the petitioners' burden to establish that the merits of an issue were not resolved against them in full and fair pro-ceedings in the state courts. *Sumner v. Mata, supra.* In the absence of such a showing, this court will accept the factual determinations of the Indiana courts, where relevant on the issues. *Sumner v. Mata, supra.*

### I.

In their allegations supporting ground one in their petition, the Nelsons claim that the state prosecutor used the post-arrest silence of Charles against him on cross-examination, and that the prosecutor improperly referred to Robert's failure to testify and his post-arrest silence in final argument. These allegations are factually inaccurate. The relevant facts as contained in the 1980 opinion of the Supreme Court of Indiana establish that the cross-examination and arguments of the prosecutor were not constitutionally impermissible. In the face of the careful reasoning of the Supreme Court of Indiana, the unsupported claims of the Nelsons do not establish that the prosecutor deprived them of any constitutional rights or a fundamentally fair trial, as is required for the issuance of a writ under 28 U.S.C. § 2254(a). *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

■ There is no basis for relief under ground one because the prosecutor did not, in fact, use anyone's post-arrest silence or Robert's silence at trial against petitioners. Neither Charles nor Robert were silent at the time of their arrests. Both made voluntary statements following their arrest which were proper subjects of cross-examination and comment at trial. Accordingly, the state prosecutor cannot be deemed to have acted in a manner contrary to *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

In *Doyle* the Supreme Court proscribed the use at trial of a suspect's decision to remain silent following arrest and the giving of warnings mandated by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65

L.Ed.2d 86 (1980). The rationale behind *Doyle* and its progeny was explained in *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (per curiam), as follows:

> In *Jenkins,* as in other post-*Doyle* cases, we have consistently explained *Doyle* as a case where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him. In *Roberts v. United States* 445 U.S. 552, 561, [100 S.Ct. 1358, 1365, 63 L.Ed.2d 622] (1980), we observed that the post-conviction, pre-sentencing silence of the defendant did not resemble "postarrest silence that may be induced by the assurances contained in *Miranda* warnings." In *Jenkins,* we noted that the failure to speak involved in that case occurred before the defendant was taken into custody and was given his *Miranda* warnings, commenting that no governmental action induced the defendant to remain silent before this arrest. 447 U.S., at 239–240, [100 S.Ct. at 2129–2130]. Finally, in *Anderson v. Charles,* 447 U.S. 404, 407–408 [100 S.Ct. 2180, 2181–82, 65 L.Ed.2d 222] (1980), we explained that use of silence for impeachment was fundamentally unfair in *Doyle* because *"Miranda"* warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence would not be used against him .... *Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances.

455 U.S. at 606, 102 S.Ct. at 1311–12.

The Nelsons were not silent after the receipt of governmental assurances. On the contrary, the Nelsons both made apparently voluntary comments to the police which had a direct bearing on their participation in the crimes. It should be noted that while *Miranda* implicitly guarantees that the silence of an accused will not be used against him, the same warnings specifically advise an accused that anything he says can be used against him in a court of law. *Id.,* 384 U.S. at 479, 86 S.Ct. at 1630. In its decision, the Supreme Court of Indi-

ana observed that the prosecutor did not use the Nelsons' "silence" against them, but instead made proper use of their voluntary comments. The Court set forth the factual background concerning this matter, as follows:

> The evidence presented at trial revealed that the victim was entering her apartment in Bloomington, Indiana, when she was abducted by three men who forced her into their car. After being transferred from the car to the back of a van, she was raped by all three men and then taken to a motel in Gary, Indiana. En route, she was again raped, and otherwise carnally abused. She was raped again in the motel room. After tying her to a bed, two of the men left the room. The third man, Petitioner Charles Nelson, remained in the room and fell asleep on the bed beside the victim. She freed herself, escaped from the room, and called the police. Charles Nelson was still in the room when the police arrived, and he was placed under arrest. Police later arrested his brother, the petitioner, Robert Nelson. At trial the victim identified both men as their abductors.

> \* \* \* \* \* \*

> Gary Police Officer Bartleg found Charles Nelson (Charles) in the motel room from which the victim had escaped. He advised Charles of his rights and placed him under arrest. After the advisement of rights, Charles volunteered that he had gone to the motel room only after receiving a telephone call from the "two guys" who had kidnapped the victim. He also admitted having had sexual intercourse with the victim.

272 Ind. at 693, 401 N.E.2d at 667.

As to Charles, the Supreme Court of Indiana observed that he had testified at trial and in so doing had admitted his presence during the abduction, the trip to Gary, and in the motel room. *Id.* at 667. Charles, in his testimony, however, denied any actual participation and on cross-examination even intimated that he had tried to help the victim. In response, the prosecu-

tor asked Charles whether he had ever told anyone of his attempt to aid the victim and whether he had had a chance to talk to the police. *Id.* at 667. The Supreme Court of Indiana observed that in *Doyle v. Ohio, supra,* the Supreme Court had reasoned that silence after *Miranda* warnings is insolubly ambiguous, but noted that Charles' comments were not insolubly ambiguous because he had elected to give an account (following arrest) of his participation in the events. *Nelson v. State, supra,* 272 Ind. at 694, 401 N.E.2d at 668. The Supreme Court of Indiana observed that no violation of Coyle occurs in situations like that involving Charles Nelson, as follows:

Courts in other jurisdictions have addressed· similar issues and have concluded that there is no *Doyle* violation where a defendant chooses to give police a selected account of an incident rather than clearly relying upon his Fifth Amendment rights. See e.g., *Twyman v. State,* (10th Cir.1977) 560 F.2d 422, *cert. denied,* (1978) 434 U.S. 1071, 98 S.Ct. 1254, 55 L.Ed.2d 774; *Simmons v. Zahradnick,* (E.D.Va.1979) 465 F.Supp. 115; *Bridges v. State,* (1978) 242 Ga. 251, 248 S.E.2d 647; *Hill v. United States,* (D.C. App.1979) 404 A.2d 525; *People v. Trumbull,* (Ill. Ct.App.1978) 67 Ill. App.3d 262, 23 Ill.Dec. 935, 384 N.E.2d 842.

We conclude that *Doyle* is not dispositive because the question of whether or not Charles chose to exercise his Fifth Amendment rights is not "insolubly ambiguous." His voluntary explanation of his conduct makes it clear that he was not relying upon his Fifth Amendment rights. While a defendant may invoke his right to remain silent at any time, it does not follow that he may remain "selectively" silent and later claim that voids in the incomplete statement are Fifth Amendment sheltered and under *Doyle* cannot be used to impeach his testimony.

There is nothing in the record to suggest that Charles' failure to relate potentially exculpatory information was an exercise of his Fifth Amendment rights.

Rather, we conclude that the omission, in the context of his post-arrest explanation, was probative upon the question of whether the exculpatory testimony was a recent fabrication. (*Nelson v. State,* 1980 Opinion, at 668).

The reasoning of the Supreme Court of Indiana is also consistent with the approach taken by the Seventh Circuit in *Jacks v. Duckworth,* 651 F.2d 480 (7th Cir.1981), *cert. denied,* 454 U.S. 1147, 102 S.Ct. 1010, 71 L.Ed.2d 300 (1982). In *Jacks,* the Seventh Circuit made it clear that *Doyle* only applies to those situations where the accused has invoked his right to remain silent and that *Doyle* does not apply to voluntary comments made by an accused relating to a crime. *Jacks v. Duckworth, supra,* at 483.

■ Charles Nelson cannot rely on *Doyle* because his comments concerning the crimes following his arrest were properly subject to use and comment by the prosecutor. *Jacks v. Duckworth, supra.* As in *Jacks,* the prosecutor was not using Charles Nelson's *silence* against him because Charles did not, in point of fact, remain silent. *See also, Sulie v. Duckworth,* 689 F.2d 128 (7th Cir.1982), *cert. denied,* 460 U.S. 1043, 103 S.Ct. 1439, 75 L.Ed.2d 796 (1983). This same conclusion is also warranted as to Robert because the prosecutor only used Robert's incriminating actions or what he actually said, relating to the crimes, following his arrest, i.e., the prosecutor did not use Robert's silence. Like Charles, Robert was not invoking his right to silence as to his comments and actions which were put into evidence at trial. Indeed, the Supreme Court of Indiana found that the state prosecutor did not directly comment on Robert's alleged post-arrest silence or his failure to testify at trial, as follows:

Robert Nelson (Robert) contends that the trial prosecutor, during final arguments, improperly referred to his failure to testify and also used "his post-arrest silence as evidence of guilt." We note that his allegations are not supported by cogent argument, nor is any authority

cited as required by Ind.R.App.P. 8.3(A)(7). We will, nevertheless, briefly address his contentions.

A Gary police officer testified that he had gone to Robert's home in the course of his investigation. When he knocked at the door and announced his purpose, Robert became abusive and refused him admittance. A detective testified that after being advised of his Fifth Amendment rights, Robert stated that the "girl was willing." During final argument, the trial prosecutor addressed this testimony. He noted that Robert, by stating that the "girl was willing," had not denied his presence. Additionally, he commented upon Robert's conduct at the time that the police went to his home; he questioned whether it was the behavior of an "innocent man" and noted that Robert could have invited the police into his home to discuss the matter.

We are here concerned with statements that are somewhat innocuous in context, and we cannot say, with any certainty, that error was committed. These were not direct comments upon Robert's post-arrest silence or his failure to testify, and any indirect implications that may have resulted are too tenuous to require reversal.

This is not a case like *Griffin v. State of California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1969), where there was a direct comment by the trial judge as well as the prosecutor concerning the failure of the accused to testify at trial. The prosecutor in this case did not make any actual comments concerning Robert's failure to testify, and the prosecutor only commented upon his relevant statements and incriminating actions. Such prosecutorial comment does not offend *Doyle* or *Griffin* and cannot be considered as a basis for habeas corpus relief. *Jacks v. Duckworth, supra; Donnelly v. DeChristoforo, supra.*

## II.

In their second ground, petitioners contend that they were provided ineffective assistance of counsel at their joint trial.

Although respondents argue that petitioners failed (in their petition) to document a single incident of their attorney's putative ineffectiveness, petitioners have attempted to remedy this by listing such alleged incompetency in their traverse at pages 6–9.

 The law regarding attorney competency in this Circuit is that petitioners must show that their counsel failed to meet a minimum professional standard. *United States ex rel. Williams v. Twomey*, 510 F.2d 634 (7th Cir.), *cert. denied*, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975). In line therewith is the presumption that counsel was conscious of his duties to his clients and sought diligently to discharge them. *United States v. Fleming*, 594 F.2d 598 (7th Cir.), *cert. denied*, 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979); *United States ex rel. Ortiz v. Sielaff*, 542 F.2d 377 (7th Cir.1976). Thus, the habeas corpus applicant has the burden of overcoming this presumption. *United States v. Fleming, supra*, at 606–607. Mere tactical or even strategic errors do not raise a presumption of a failure to meet the constitutional guarantee of adequate counsel. *Id.* at 607; *United States ex rel Williams v. Twomey, supra*, at 640.

An examination of the grounds raised between pages 6 and 9 of petitioners' traverse does not demonstrate anything approaching conduct on their attorney's part which would warrant a conclusion that he "failed to meet a minimum professional standard." This is consistent with the decision of the Supreme Court of Indiana that the defense attorney was generally effective and that his performance was not adversely affected by any putative conflict of interest. In its opinion, the Supreme Court of Indiana pointed out that none of the general allegations of ineffectiveness made by the petitioners had any actual merit. *Nelson v. State*, 272 Ind. 696–98, 401 N.E.2d at 669–70.

 Part and parcel to petitioners' argument of ineffective trial counsel is their contention that their joint representation at trial by a single attorney violated their

Sixth Amendment rights. Petitioners argue that, because the state trial record is silent as to whether they waived their rights to separate counsel or consented to joint representation, a presumption exists that they were adversely affected by said joint representation. This presumption, petitioners argue, is allegedly reinforced by the unfolding of events at trial, thereby constituting "an actual conflict of interest in trial counsel's representation of both Nelsons at trial." Petitioners' Traverse at 9.

In *Dean v. Duckworth*, 559 F.Supp. 1331 (N.D.Ind.1983), this court had occasion to confront the problem of the Sixth Amendment's guarantee of counsel in a joint representation context. At page 1333, this court set out the general law applicable to such situations:

> The Sixth Amendment's guarantee of a right to counsel necessarily includes the right to *effective* assistance of counsel. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Where a single attorney represents more than one defendant at trial, the requirement that counsel be effective means that counsel must be free from conflicting interests. *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The mere possibility of a conflict of interest arising at trial presents no Sixth Amendment violation and imposes no duty on the trial court to inquire into circumstances of multiple representation. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). However, the failure to appoint separate counsel, or at least to take steps to insure that no conflict exists, is reversible error where there is a timely objection made by counsel or defendants, *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), or where the possibility of conflict becomes apparent on the face of the record. *Wood v. Georgia, supra. See also Wilson v. Morris*, 699 F.2d 926 (7th Cir. 1983); *United States ex rel Williams v. Franzen*, 687 F.2d 944 (7th Cir.1982);

> *Davis v. Franzen*, 671 F.2d 1056 (7th Cir.1982). (footnote omitted)

At page 1334 of its opinion, this court went on to say:

> In the present case, neither the petitioners nor their defense counsel voiced any objection to proceeding to trial without benefit of separate counsel. Thus, "(i)n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. at 348, 100 S.Ct. at 1718, quoted in *Ross v. Heyne*, 638 F.2d 979, 983 (7th Cir.1980). In line with the above, petitioners must demonstrate (1) the existence of an actual conflict of interest, and (2) that said conflict adversely affected the performance of trial counsel. *Id.*

The above states precisely the situation presented here: although there is no showing in the record of a waiver or consent on petitioners' part to joint representation, neither is there any showing of any objections having been made by petitioners regarding said joint representation. In point of fact, quite the opposite is true: the record reveals that petitioners declined the services of the public defender's office and elected to retain private counsel to represent them jointly. (R. 15–16). Since "multiple representation without a showing of conflict of interest is not in itself a violation of the sixth amendment[,]" *Ross v. Heyne, supra*, 638 F.2d at 982, citing *United States v. Mandell*, 525 F.2d 671, 677 (7th Cir.1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 774, 46 L.Ed.2d 637 (1976), petitioners must allege and show both an *actual* conflict and that said conflict *adversely affected* trial counsel's performance. *Dean v. Duckworth, supra*, 559 F.Supp. at 1334.

Unlike the circumstances in *Dean*, where this court deemed it necessary to hold a full blown hearing in open court with extensive oral argument by both sides, no such necessity for an evidentiary hearing is presented here. A careful examination of

the state court record, the Supreme Court of Indiana's two published opinions, and the pleadings compiled here to date, discloses that petitioners have failed to show any conflict arising at their joint trial, much less that a conflict adversely affected their lawyer's performance. In the absence of any showing of either an objection having been made to their joint representation, or of any conflict arising therefrom, no just cause exists for the issuance of a writ.[1]

Accordingly, the writ is DENIED, petition DISMISSED. SO ORDERED.

---

**1.** This does not, of course, constitute approval by this court of what appears to have been sloppy judicial work on the part of the state trial court. The Sixth Amendment guarantee of effective counsel is of paramount concern to a defendant facing the potential deprivation of his liberty (if not his life), and trial judges should be painfully aware of their responsibility to recognize the potential difficulties inherent in joint representation situations and to apprise defendants thereof. Hence the clear mandate of F.R.Crim.P. 44(c):

> Joint Representation. Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

This rule, of course, is only applicable to the federal courts, and goes beyond the language of *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), wherein the Supreme Court said that a trial court must conduct an inquiry concerning possible conflicts of interest in joint representation cases *only* if "the trial court knows or reasonably should know that a particular conflict exists." *Id.* at 347, 100 S.Ct. at 1718. It should be noted in fairness to the state trial court, that petitioners' trial in the underlying criminal action antedated both *Cuyler* and the adoption of paragraph (c) to F.R. Crim.P. 44; nevertheless, the concerns voiced therein are not of recent vintage. See, e.g., Code of Professional Responsibility, Canon 4, and DR 4–101(B)(2).

In *Ross v. Heyne,* 483 F.Supp. 798 (N.D.Ind.), *aff'd in part, rev'd in part and rem.,* 638 F.2d 979 (7th Cir.1980), this court stated as follows at page 804:

In fairness, the state criminal trial judge was not obligated to predict this bit of constitutional wisdom in 1968 when the appointments of counsel were made for this plaintiff and her then co-defendants. Neither were the then appointed counsel bound to know how constitutionally sensitive the problem of joint representation of co-defendants in the same case would become. No criticism is here intended of either the appointing judge or appointed counsel.

&ast; &ast; &ast; &ast; &ast; &ast;

The most that can be said is that trial counsel for Ross had a potential problem in cross-examining a witness who was being represented by his law partner. The situation in this regard is well described by Judge, now Mr. Justice Stevens in *U.S. v. Jeffers,* 520 F.2d 1256 (7th Cir.1975), in Parts II and III thereof, pps. 1262–1267.

The record here does not even come close to suggesting that the Sixth Amendment rights to effective counsel was in any way impaired and Ross has totally failed to demonstrate the same.

On appeal, the Seventh Circuit Court of Appeals was less sympathetic to the state trial judge regarding his failure to probe closely into the problem of conflict in the joint representation context. At page 984 of its opinion, the Court declared:

> Upon examining this record, the district court below found that Ross had failed to demonstrate any actual conflict of interest that deprived her of the effective assistance of counsel. The court concluded that "[t]he most that can be said is that the trial counsel for Ross had a potential problem in cross-examining a witness who was being represented by his law partner." *Ross v. Heyne,* 438 F.Supp. at 804. We respectfully disagree. The "most that can be said" is that the trial counsel had an actual conflict of interest that prevented him from effectively cross-examining Spencer and Ivy and impaired his ability to defend petitioner Ross.

See also *United States ex rel. Williams v. Franzen,* 687 F.2d 944, 950 (7th Cir.1982); and *Davis v. Franzen,* 671 F.2d 1056, 1059 (7th Cir.1982). Such an *actual conflict of interest* is not facially present in the record of this case.