Stephen YURINA, Appellant,

v.

STATE of Indiana, Appellee.

No. 883 S 299.

Supreme Court of Indiana.

Feb. 21, 1985.

Law Offices of Jack Davis, John F. Davis, Mary Jane Humphrey, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Stephen Yurina was found guilty by a jury in the Gibson Circuit Court of robbery while armed with a deadly weapon and was further found to be a habitual criminal. He was sentenced to a term of fifty years imprisonment by the trial judge. Six issues are presented for our review on this direct appeal as follows:

1. denial of Defendant's motion for mistrial based on testimony that Defendant declined to make a statement subsequent to his arrest;

2. testimony of pharmacy owner that items stolen during this robbery were controlled substances;

3. testimony that Defendant had no right to take said items;

4. use of Defendant's in-court admission of his prior felony conviction during the habitual criminal phase of Defendant's trial;

5. admission of certain records and exhibits which Defendant claims were improperly authenticated; and

6. alleged error in sentencing.

The facts show that at approximately 6:15 p.m. on April 13, 1982, two men entered the Garbers' Rexall Drug Store in Fort Branch, Indiana, and committed a robbery therein. Witnesses testified that one of the men carried a pistol while the other carried a shotgun. The robbers forced the four store employees to go to the back of the store and lie down. Terri Dewig, the pharmacist, showed the men where the narcotics cabinets were located and gave them the key. Thereafter the robbers returned to the cash register in the front of the store and, after opening the register, fled. Witnesses observed that the two men possessed a white Buick automobile with a

black top when they committed this robbery. Princeton Police Officers Fifth and Rhinefort received a report of the robbery and were directed to look for a white Buick on Highway 41. About thirty minutes after the robbery, these two officers drove into a gasoline station to investigate a white Buick. The officers there talked to defendant Yurina and another man, Jeff King, and were informed by Yurina that he and King had just been at the She Lounge in Evansville. The officers did not take the two men into custody at that time and they drove away. Two of the individuals who had been at the pharmacy during the robbery subsequently picked the photographs of Yurina and King from an array of twelve photographs presented to them by Indiana State Police Trooper Sibbett. Yurina and King were later arrested in Utah.

I

Defendant Yurina first claims that his constitutional right against self-incrimination was violated when Officer Sibbett testified that Yurina and co-defendant King did not make any statements on the airplane trip from Utah to Indiana after their arrest. *See* Fifth Amend., U.S. Const. Sibbett specifically testified that the two men were arrested in the State of Utah and were flown in Sibbett's custody from Utah to Indiana. On direct examination, Sibbett was asked by the prosecutor whether any conversation between Defendant Yurina and the officer ensued on the flight from Utah to Indiana. Sibbett indicated a conversation with Yurina wherein Yurina told the officer that he had sold his Buick in Utah because someone had poured sugar in the gas tank. Officer Sibbett indicated that most of the talk was idle discussion but that Yurina did reveal certain details about the charged crime. Sibbett then finished his answer by stating that Yurina and King did not provide voluntary statements regarding their case.

Defendant now claims that Sibbett's testimony violated his Fifth Amendment right against self-incrimination because it re-

ferred to his silence after arrest. He cites *Doyle v. Ohio,* (1976) 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 and *Jenkins v. Anderson,* (1980) 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86. The United States Supreme Court has held that the Fifth Amendment right against self-incrimination is a fundamental right and is applicable to the states through the Fourteenth Amendment. *Malloy v. Hogan,* (1964) 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. *Doyle* interpreted this right to prevent the State from referring to the accused's silence after arrest and held:

"Silence in the wake of these warnings [pursuant to *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694,] may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. [footnote and citation omitted] Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."

*Doyle,* 426 U.S. at 617, 96 S.Ct. at 2244, 49 L.Ed.2d at 97. *Jenkins* held that the State's use of an accused's pre-arrest silence regarding the crime for which he was arrested and prosecuted did not violate the Fifth Amendment when for the purpose of impeaching the accused's credibility during cross-examination after the accused had taken the stand in his own defense. This Court has held that a prosecutor's use of a defendant's post-arrest silence to impeach his trial testimony is fundamentally unfair and an instruction to the jury that the defendant had no duty to speak is not sufficient to remedy the harm imposed. *Jones v. State,* (1976) 265 Ind. 447, 355 N.E.2d 402. This Court also has held, however, that a defendant's right against self-incrimination was not violated when, on cross-examination, the prosecutor questioned Defendant about providing two contradictory statements to law enforcement officials during his post-arrest detention. We stated:

"Appellant is not being penalized for his silence here. He was being questioned about two statements given 69 days apart which were totally inconsistent with each other. While a defendant may invoke his right to remain silent at any time, it does not follow that he may remain 'selectively' silent and later claim that voids in the incomplete statement are sheltered by the Fifth Amendment and under *Doyle* cannot be used to impeach his testimony. *Nelson [v. State,* (1980) 272 Ind. 692, 401 N.E.2d 666]."

*Carlyle v. State,* (1981) Ind., 428 N.E.2d 10, 13. In *Nelson, supra,* a defendant, at the time of his arrest, gave police officers a brief account of his involvement in a rape and kidnapping matter. At trial, the prosecutor was permitted to ask the defendant whether he had attempted to aid the victim and whether the police had given him the opportunity "to talk." We found:

"There is nothing in the record to suggest that [Defendant] Charles' failure to relate potentially exculpatory information was an exercise of his Fifth Amendment rights. Rather, we conclude that the omission, in the context of his post-arrest explanation, was probative upon the question of whether the exculpatory testimony was a recent fabrication."

*Nelson,* 272 Ind. at 695, 401 N.E.2d at 668; *See also Jacks v. State,* (1979) 271 Ind. 611, 394 N.E.2d 166, *reh. denied.* The United States Supreme Court held that an improper comment on a defendant's exercise of his Fifth Amendment right against self-incrimination must be analyzed in light of the harmless error doctrine. *Chapman v. California,* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. The Supreme Court subsequently held:

"The question a reviewing court must ask is this: absent the prosecutor's allusion to the failure of the defense to proffer evidence to rebut the testimony of

the victims, is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?"

*United States v. Hastings,* (1983) 461 U.S. 499, 510, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96, 107.

In the instant case, Officer Sibbett testified about the conversation between himself and Defendant and then generally finished his answer by stating that the defendants did not wish to provide voluntary statements regarding their case. Upon Defendant's objection, the trial judge immediately admonished the jury as follows: "The court now rules that the answer of this witness to the last question from the State of Indiana is ordered stricken, the jury is admonished you're not to consider this witness's last answer in determining your verdict in this case or the contents of the last answer, if you remember." Defendant Yurina did testify in his own defense in this cause and his silence was not utilized to impeach his alibi which was presented to the jury. It is apparent that there was much direct evidence presented to the jury from which they could properly find Yurina guilty beyond a reasonable doubt without regard to the comment on Yurina's failure to give a post-arrest statement to law enforcement officials. Officer Sibbett's comment clearly was not a deliberate attempt on the part of the State to use Yurina's silence to indicate his guilt. The statement was made by the officer to finish up his testimony regarding conversations. We therefore conclude, considering the strength of the State's proof and the trial court's admonishment to the jury, that any error arising from Sibbett's comment was harmless beyond a reasonable doubt and presents no reversible error here.

## II

■ Defendant next contends that State's Exhibits 19 through 23, 26 through 29 and 32 were not properly admitted into evidence during the habitual offender phase of his trial since said documents were not properly authenticated or certified. All of said Exhibits pertained to De-

fendant's Utah burglary conviction. Exhibits 29, 30 and 31 were copies of Defendant's arraignment, judgment and commitment papers. Exhibits 22 and 27 were certificates of attestation by the Clerk of Emery County, Utah, Circuit Court verifying that Exhibits 29 and 31 were true and complete copies of the original documents filed in *State of Utah v. Stephen Yurina,* Criminal Cause No. 666. Defendant Yurina claims the authentication was not properly perfected; however, since the certificate of authentication was not physically attached to or annexed to the appropriate records. As we have indicated, the authentications referred directly to the other documents and described them as true copies of originals. State's Exhibits 23, 19, and 27 certify that John Ruggeri is the Judge of the Emery County Circuit Court and that Glen Bott is the Clerk of said Court. The authentication of public records in this cause was done in the same manner specifically approved by this Court in *Minneman v. State,* (1982) Ind., 441 N.E.2d 673 *cert. denied,* (1983) 461 U.S. 933, 103 S.Ct. 2099, 77 L.Ed.2d 307. *See also Hudson v. State,* (1983) Ind., 443 N.E.2d 834; *Graham v. State,* (1982) Ind., 441 N.E.2d 1348; *Griffin v. State,* (1981) 275 Ind. 107, 415 N.E.2d 60.

■ Defendant also argues that the Utah records should not have been admitted since the prosecutor relied on Utah law to support his proof of the Utah conviction. Defendant specifically claims that the prosecutor used the laws of Utah to prove that the burglary in Utah was a felony for purposes of the Indiana habitual criminal statute and that he was not notified that the laws of another jurisdiction were going to be used as proof of a fact in his cause. Ind.Code § 34-3-2-4 (Burns 1973) provides:

"Any party may also present to the trial court any admissible evidence of such laws, but, to enable a party to offer evidence of the law in another jurisdiction or to ask that judicial notice be taken thereof, reasonable notice shall be given to the adverse parties either in the pleadings or otherwise."

The State now contends that Defendant had notice that a prior burglary conviction from Utah was to be used in the habitual offender stage of his trial as the habitual offender information so stated. We agree. Furthermore, this Court has held that the question of whether a prior conviction amounts to a felony is a matter of law on which the jury is to be instructed. *Smith v. State*, (1982) Ind., 432 N.E.2d 1363. The prosecutor did not need to rely on Utah law to prove his case as the facts adduced at trial on the habitual offender count were sufficient to present to the jury probative evidence from which they could determine that the crime committed in Utah was a felony pursuant to the definition thereof in the Indiana statutes. Defendant presents no error on this issue.

### III

Defendant next argues that the trial court abused its discretion by sentencing him to twenty years imprisonment for a class B felony robbery conviction, ten years over the presumptive sentence of ten years for class B felonies, because the aggravating circumstance of his prior criminal record was also used to support his habitual offender sentence. Defendant concedes, however, that this Court has held that the use of prior convictions to enhance the sentence for the latest crime as well as to constitute an aggravating factor in the underlying sentence does not violate the ban on double jeopardy. *Anderson v. State*, (1981) Ind., 426 N.E.2d 674; *Griffin v. State*, (1981) 275 Ind. 107, 415 N.E.2d 60; *Ross v. State*, (1980) 274 Ind. 588, 413 N.E.2d 252. Defendant attempts to distinguish these cases by asserting that the sentencing court in his case relied only on prior convictions to justify the aggravation of the presumptive sentence. An examination of the trial judge's order, however, shows that this is not so. The record shows the trial court also considered the following aggravating circumstances: a sawed-off shotgun was used in the robbery and Defendant had a history of drug addiction. The trial judge clearly set out his reasons for enhancing the presumptive sen-

tence here from ten to twenty years. The reasons given by the trial court are supported by the record and by the nature of the crime and the character of the perpetrator. *See Kelly v. State*, (1983) Ind., 452 N.E.2d 907; *Page v. State*, (1981) Ind., 424 N.E.2d 1021, *on remand*, Ind., 442 N.E.2d 977, *reh. denied* (1983). We find no abuse of the trial judge's discretion nor do we find his determination of the sentence to be unreasonable.

### IV

Defendant further contends that the trial court erred by permitting State's witness Robert Garbers, owner of Garbers' Rexall Drugstore, to testify that the robbers took schedule II controlled substances during the robbery. Defendant argues that, in effect, the prosecutor attempted to prove a crime apart from the one charged and that the prejudicial effect of Garbers' testimony was greater than its probative value. The information filed in this matter alleged that Defendant took the pharmacy owner's property, including controlled substances, by putting his employees in fear. Garber testified that his property which was missing after the robbery consisted of money and controlled substances. The State contends that the testimony regarding what items of property were taken in the robbery was clearly of consequence to the determination of issues in the prosecution. While the characterization of the drugs taken in the robbery as controlled substances may have had some prejudicial effect before the jury, it is clear that Garbers' testimony was relevant to the issue of the taking of another's property and of the identification of Defendant as one of the perpetrators. The probative value of the evidence therefore outweighed its prejudicial value since it was one of the basic facts of the very crime itself and the trial court did not abuse its discretion by admitting the evidence before the jury. *Hedrick v. State*, (1982) Ind., 430 N.E.2d 1150.

### V

Defendant next argues that the trial court erred by permitting Terri Dewig,

pharmacist of Garbers' Drugstore, to testify that Defendant had no right to tak ethe controlled substances he took from the pharmacy since such testimony represented an invasion of the jury's province. The State properly points out that in a robbery prosecution, the State must prove that the defendant knowingly and intentionally took property *of another* by threat of force or by putting a person in fear. Ind.Code § 35-42-5-1 (Burns 1979). One of the essential elements in the crime of robbery is the taking of another's property. The State therefore was required to prove that Yurina removed money and controlled substances from Garbers' Rexall Drugstore on April 13, 1982, as alleged in the information. The State also had to show that he did not have the permission, right, or authority to remove these items from the property. The owner or other lawful possessor of the stolen property is the proper one to testify that the items were taken without permission, right or authority. The question of ownership and possession was an issue in this trial and Dewig's testimony concerning ownership was clearly of probative value in the jury's determination of these questions. *See Baker v. State,* (1980) 273 Ind. 64, 402 N.E.2d 951; *Jackson v. State,* (1971) 257 Ind. 477, 275 N.E.2d 538.

## VI

 Finally, Defendant claims that the trial court erred by allowing the prosecutor to have certain of Defendant's testimony from the initial guilt stage of the proceedings read to the jury during the habitual offender phase. During the guilt phase of the trial, Defendant testified that he had been convicted of burglary in Utah on October 7, 1980. The State now contends that this issue is not available for review in this appeal since Defendant did not specify any reasons for his objection at the time he made it before the trial court. It is well-settled that in order to properly preserve an issue for appellate review, one must state with reasonable specificity the grounds for his objection while before the trial court. *Pounds v. State,* (1983) Ind.,

443 N.E.2d 1193; *Brown v. State,* (1981) 275 Ind. 441, 417 N.E.2d 333. The record does not disclose any grounds for Defendant's objection to the use of his guilt phase testimony during the habitual offender phase of his trial. Accordingly, he may not now argue a new or different reason before this Court on appeal. *Spivey v. State,* (1982) Ind., 436 N.E.2d 61.

 Although Defendant waived consideration of this issue, we note that Defendant's admission clearly established a fact which the prosecutor had the burden to prove and therefore was properly admissible. Defendant's complaint seems to be that the trial court erred by failing to read all of Yurina's trial testimony, reading instead only that portion containing his admission of his prior burglary conviction. The record shows, however, that defense counsel did not request that any additional part of Yurina's testimony be read during the habitual criminal phase. Furthermore, any other portion of Yurina's trial testimony would have had no relevance to the material issues in the habitual offender phase. Here, the prosecutor had a number of documents admitted for the purpose of proving Defendant's Utah burglary conviction as indicated in Issue II of this opinion. Defendant objected to the introduction of these documents and his in-court admission of his prior Utah conviction was therefore clearly relevant to prove that part of the habitual offender count. *Hernandez v. State,* (1982) Ind., 439 N.E.2d 625. There is no error on this issue.

The trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.